United States District Court

For the Northern District of California

1

2

3

4

5

6

7

*E-Filed 4/7/11*

8        IN THE UNITED STATES DISTRICT COURT

9      FOR THE NORTHERN DISTRICT OF CALIFORNIA

10            SAN FRANCISCO DIVISION

11

12  PATRICK VINATIERI,                      No. C 10-3854 RS

13            Plaintiff,                    **ORDER GRANTING DEFENDANTS'
                                            MOTION TO DISMISS**
14      v.

15  AARON MOSLEY, et al.,

16

17            Defendants.
   _____/

18                    I.   INTRODUCTION

19        The County of Napa, and Officers Aaron Mosley, Craig Wong, Cory Johnson, and Oscar

20  Ortiz move to dismiss plaintiff Patrick Vinatieri's First Amended Complaint ("FAC") for failure to

21  state a plausible claim.  As against the municipal defendants and the officers, Vinatieri asserts six

22  claims for relief: (1) intentional and arbitrary discrimination in violation of the Fourteenth

23  Amendment; (2) deliberate indifference to plaintiff's medical needs; (3) conspiracy to violate the

24  Fourteenth Amendment, premised on the same equal protection theory advanced in the first claim;

25  (4) conspiracy to violate the Fourteenth Amendment, predicated on a substantive due process

26  theory; (5) conspiracy to retaliate in violation of the First Amendment; and (6) conspiracy to violate

27  the Fourth Amendment's guarantee against unreasonable search and seizure.

28                    II.   BACKGROUND

**United States District Court**
For the Northern District of California

1    The FAC advances the following facts.  Late in the evening of August 30, 2008, Patrick

2    Vinatieri called the Sherriff's Department of Napa County to complain of loud music emanating

3    from the property owned by defendants Arnold Vallerga and his son Michael, located roughly 70

4    feet from Vinatieri's property, and through which the Vallergas held an easement.  Deputy Craig

5    Wong responded to Vinatieri's call and, after speaking with Vinatieri, ventured to the Vallerga

6    property to investigate.  Vinatieri avers that he was confronted soon after Wong departed by

7    Michael Vallerga and his wife, Eileen McMullen, on the road near Vinatieri's home.  Vinatieri

8    explains he was holding a video camera in one hand, and a cell phone in the other.  A fight ensued.

9    According to Vinatieri, the couple forced him to the ground and then repeatedly kicked his head.

10    When Wong returned to Vinatieri's property, he found the plaintiff beaten and dazed.  The

11    officer called for assistance and, within minutes, was joined by Deputies Mosley and Johnson, and

12    Sergeant Ortiz.  Vinatieri's children and Michael Vallerga's father, Arnold, were also present when

13    the officers arrived.  The Vinatieri children apparently urged the officers to arrest Michael Vallerga,

14    but they did not do so.  Instead, one of them telephoned for an ambulance.  When it arrived,

15    Vinatieri claims the officers directed the vehicle to the Vallerga property.  Complaining of a back

16    injury, Michael Vallerga was placed in the ambulance.  Although Vinatieri claims his injuries were

17    visibly severe, he notes that the officers instructed him to ride in the same ambulance with Vallerga.

18    Finding this unacceptable, Vinatieri drove to the hospital instead with his children.  Soon after his

19    release, Vinatieri contends he tried on two occasions to schedule a meeting with the Napa County

20    Sheriff to discuss the incident but was told the Sheriff was unavailable.

21    The dispute between these neighbors long predates the August 2008 incident.  In fact,

22    Vinatieri recounts that a feud between the families began in the late 1970s, soon after Vinatieri

23    purchased the neighboring lot.  By the early 1990s, Vinatieri relates that the families were at cross

24    purposes in civil litigation.  Their disagreement appears to stem principally from environmental

25    disputes over the Vallerga family's land use, but also concerns use of the easement.  Each side has

26    over the years reported the other for various misdeeds to the Sheriff's Department, but Vinatieri

27    asserts that over time the Department began to favor the Vallerga family.  In particular, Vinatieri

28

No. C 10-3854
ORDER

2

United States District Court
For the Northern District of California

1    claims Officer Mosley developed a friendship with them.  Allegedly as a result, Mosley frequently

2    dropped by Vinatieri's property to investigate complaints and on several occasions stopped friends

3    and visitors on their way off the property to check on reports of disorderly behavior and drunk

4    driving.  When Vinatieri complained to the local Sheriff of Mosley's suspected alliance with the

5    Vallerga family, he avers the Sherriff did not take his complaint seriously, but responded instead,

6    "the deputies can be friends with your neighbors."  On the night of August 30, 2008, Vinatieri

7    claims Mosley was responsible for convincing the other officers at the scene not to arrest Michael

8    Vallerga or Eileen McMullen.  More broadly, Vinatieri theorizes that Mosley, at some point prior to

9    August 30, 2008, agreed to use his influence to shield the Vallerga family from penal consequences.

10   As a result, Vinatieri insists the Vallerga family felt empowered and even encouraged to resort to

11   violence on that August evening.

12                                    III.  LEGAL STANDARD

13           When addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

14   court must accept a plaintiff's factual allegations as true and construe the complaint in the light most

15   favorable to that party.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  Dismissal is appropriate

16   where a complaint lacks "a cognizable legal theory or sufficient facts to support a cognizable legal

17   theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation

18   omitted).  In considering a Rule 12(b)(6) motion, a district court generally may not take into account

19   material beyond the pleadings.  *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552

20   (9th Cir. 1984).  The exception is material properly submitted as part of the complaint.  *Amfac Mtg.*

21   *Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 429-30 (9th Cir. 1978).  Rule 8(a)(2) demands that a

22   pleading include a "short and plain statement of the claim showing that the pleader is entitled to

23   relief."  The Supreme Court has instructed that this mandate does not require "detailed factual

24   allegations," but "demands more than an unadorned, the-defendant-harmed-me accusation" or

25   "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

26   1949 (2009) (internal quotation marks omitted).  "A pleading that offers 'labels and conclusions' or

27   a 'formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (*quoting Bell Atl. Corp.*

28                                                                            NO. C 10-3854
                                                                            ORDER

1    *v. Twombly*, 550 U.S. 544, 555 (2007)).

2        Federal Rule of Civil Procedure 15(a) instructs that leave to amend an order of dismissal

3    "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Rule

4    15's policy of favoring amendments to pleadings should be applied with extreme liberality."

5    *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  That said, a court

6    may foreclose amendment where it would be futile or subject to dismissal.  *See Gadda v. State Bar*

7    *of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007).

8                                    IV.  DISCUSSION

9            1.  <u>Individual Officer Liability</u>

10        To state a section 1983 claim against an individual officer, a plaintiff must plead: (1) a

11   defendant acting under color of state law; (2) deprived plaintiff of rights secured by the Constitution

12   or federal statutes.  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (*citing Smith v.*

13   *Cremins*, 308 F.2d 187, 190 (9th Cir. 1962)).  To demonstrate a *conspiracy* to violate constitutional

14   rights, "the plaintiff must state specific facts to support the existence of the claimed conspiracy."

15   *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) (*quoting Burns v. County of*

16   *King*, 883 F.2d 819, 821 (9th Cir. 1989)).  More specifically, a plaintiff must allege facts suggestive

17   of "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of*

18   *America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citations omitted).  "To be

19   liable, each participant in the conspiracy need not know the exact details of the plan, but each

20   participant must at least share the common objective of the conspiracy." *Id.* at 1541.

21           a.  <u>Statute of Limitations</u>

22        The Supreme Court has established that the forum state's statute of limitations for personal

23   injury torts applies to section 1983 actions.  *Wilson v. Garcia*, 471 U.S. 261, 267-69 (1985).  *See*

24   *also Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 926 (9th Cir. 2004).  California Code of

25   Civil Procedure section 335.1 provides that the statute of limitations for personal injury actions is

26   two years.  While state law also provides the applicable period for the conspiracy claim, federal law

27   governs the time of accrual.  *Gibson*, 781 F.2d at 1340 (*citing Venegas v. Wagner*, 704 F.2d 1144,

28

No. C 10-3854
ORDER

4

**United States District Court**
For the Northern District of California

1   1145 (9th Cir. 1983); *Gowin v. Altmiller*, 663 F.2d 820, 822 (9th Cir. 1981)).  "The Ninth Circuit

2   determines the accrual of civil conspiracies for limitations purposes in accordance with the last overt

3   act doctrine." *Id.* (*citing Venegas*, 704 F.2d at 1146; *Bergschneider v. Denver*, 446 F.2d 569 (9th

4   Cir. 1971)).  Under this doctrine, "[i]njury and damage in a civil conspiracy action flow from the

5   overt acts, not from 'the mere continuance of a conspiracy.'" *Id.* (*quoting Kadar Corp. v. Milbury*,

6   549 F.2d 230, 234 (1st Cir. 1977)).  As the Court in *Gibson* explained, because "the cause of action

7   runs separately from each overt act that is alleged to cause damage to the plaintiff, [s]eparate

8   conspiracies may not be characterized as a single grand conspiracy for procedural advantage." *Id.*

9   (alterations in original, citations omitted).

10          The fight between Vinatieri and his neighbors occurred on August 30, 2008.  Vinatieri filed

11   his original Complaint on August 27, 2010.  Insofar as the constitutional violations underlying

12   Vinatieri's section 1983 claims occurred on that date, there is no question that Vinatieri's claims

13   were filed within the limitations period.  To the extent, however, that plaintiff has included facts and

14   details stemming as far back as 1978, defendants argue *Gibson* prevents this Court from considering

15   such events as acts because they occurred outside the two-year limitations period (before August 27,

16   2008).  While defendants are correct that the limitations period would bar pre-August 27, 2008

17   conduct as actionable, such factual averments may appropriately be considered for context and

18   background.

19          b.  <u>Equal Protection</u>

20          In his first claim for relief, Vinatieri asserts that defendants violated his right to equal

21   protection, as guaranteed by the Fourteenth Amendment.  Vinatieri's third claim alleges defendants

22   conspired to do the same.  He argues that Mosley, as a product of his friendship with the Vallerga

23   family, accorded them special treatment.  As a result of that understanding, Vinatieri claims Mosley

24   convinced his fellow officers on the night of August 30 not to arrest Michael Vallerga or Eileen

25   McMullen.  Defendants do not dispute that the officers were acting under color of state law.  They

26   reject, however, that any constitutional violation occurred, or that a conspiracy was afoot.

27   Defendants argue that, as a threshold matter, Vinatieri has not pointed to a colorable underlying

28

NO. C 10-3854
ORDER

**United States District Court**
For the Northern District of California

constitutional violation.  It is Vinatieri's theory that the officers improperly singled him out when they refused to arrest Vallerga and McMullen under circumstances purportedly suggestive of a crime.  Vinatieri insists he was "singled out" because Mosley liked the Vallerga family and *disliked* Vinatieri.  An officer's decision to arrest is inherently vested with discretion, defendants contend, and there is no general, constitutional right to state protection against criminals.

While that proposition is legally accurate, it does not follow that an officer's omission or failure to arrest is immune from equal protection scrutiny.  In *Elliot-Park v. Manglona*, for example, the Ninth Circuit found that a victim of a traffic collision pleaded a colorable equal protection violation where she alleged that officers failed to arrest or even investigate the at-fault driver.  592 F.3d 1003 (9th Cir. 2010).  There, a man collided with plaintiff's vehicle.  Although the plaintiff claimed the man was obviously intoxicated, the responding officers did not perform a breathalyzer test or arrest him.  Although the officers did call an ambulance for plaintiff and question bystanders, they otherwise did not treat the drunk driver as a criminal suspect.  The plaintiff claimed her efforts to pursue criminal charges were further thwarted by the responding officers.  Importantly, the plaintiff alleged the officers were motivated by their racial affinity to the drunk driver—that driver and all responding officers were ethnically Micronesian while plaintiff was ethnically Korean.  While the Court agreed that "individuals don't have a constitutional right to have police officers arrest others who have victimized them," *id.* at 1006, and that the "officers' discretion in deciding whom to arrest is certainly broad," that discretion, according to the Court, plainly "cannot be exercised in a racially discriminatory fashion."  *Id.*  In other words, the officers were not permitted to give the drunk driver a "pass" if the reason behind it was racial bias in favor of the driver and against the plaintiff.  *Id. See also Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) (noting that while there is no right to state protection against criminals, "[t]here is a constitutional right . . . to have police services administered in a non-discriminatory manner—a right that is violated when a state actor denies such protection to disfavored persons").  The Court also rejected the officers' argument that "investigation and arrest" are not "protective services" unless there is a continuing danger to the victim.  The Court reasoned that "[i]f police refuse to investigate or arrest

United States District Court

For the Northern District of California

1    people who commit crimes against a particular ethnic group, it's safe to assume that crimes against

2    that group will rise." *Id.* at 1007.

3    Vinatieri's equal protection theory has some facial similarity to that advanced in *Manglona*.

4    He suggests the officers abused their discretion by refusing to arrest Vinatieri's attackers because, at

5    best, Mosley disliked Vinatieri and, at worst, because Mosley had *sacrificed* his discretion when he

6    promised to use his office to benefit the Vallerga family.  Unlike in *Manglona*, however, Vinatieri

7    does not advance a race-based claim.  In fact, he acknowledges that he has not alleged membership

8    in any protected class.  Instead, he argues he is a member of a "class of one," and cites to the

9    Supreme Court's paradigmatic cases in that arena: *Village of Willowbrook v. Olech*, 528 U.S. 562

10   (2000) and *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008).

11   In *Olech*, the Court explained that "[o]ur cases have recognized successful equal protection

12   claims brought by a 'class of one,' where the plaintiff alleges that [he or] she has been intentionally

13   treated differently from others similarly situated and that there is no rational basis for the difference

14   in treatment."  528 U.S. at 564.  The Court later narrowed the scope of viable "class of one" claims

15   in *Engquist*.  There, the Court clarified that a plaintiff cannot advance a "class of one" equal

16   protection claim in the employment context.  The Court went on to reason that such a theory is

17   workable only where there is some "clear standard against which departures, even for a single

18   plaintiff, could be readily assessed."  *Engquist*, 553 U.S. at 602.  In other words, where an official

19   has discretion to make a decision "based on a vast array of subjective, individualized assessments,"

20   "the rule that people should be 'treated alike, under like circumstances and conditions' is not

21   violated . . . because treating like individuals differently is an accepted consequence of the discretion

22   granted."  *Id.* at 603 (citations omitted).  The example drawn by the Court is of particular

23   importance here: a traffic officer stationed on a busy highway has discretion to choose randomly

24   among violators, and to single out one speeder without violating the equal protection clause.

25   "[A]llowing an equal protection claim on the ground that a ticket was given to one person and not

26   others, even if for no discernable or articulable reason," the Court explained, "would be

27   incompatible with the discretion inherent in the challenged action."  *Id.* at 604.

28

NO. C 10-3854
ORDER

7

**United States District Court**
For the Northern District of California

1    Here, Vinatieri's class of one theory presents two complications not present in the scenario

2    reviewed in *Manglona*.  First, defendants reiterate their argument that an officer's decision not to

3    arrest an individual is inherently discretionary.  Absent a suspect classification as in *Manglona*,

4    defendants insist the Court need look no farther than the traffic officer in *Enquist* for the proposition

5    that a plaintiff cannot make out a class of one theory to support a claim involving selective

6    enforcement of the law or failure to render police services evenly.  Second, defendants argue

7    Vinatieri has not identified to whom, exactly, he was "similarly situated."

8    Turning to defendants' first point, their reading of *Engquist* is not without some support in

9    this district.  Although it does not appear that the Ninth Circuit has addressed the issue directly, at

10   least one district court has reasoned that equal protection claims targeting officer decision-making

11   should be limited to those alleging membership in a suspect class.  *See Mazzeo v. Gibbons*, No. 08-

12   01387, 2010 WL 4384207, at \*7 (D. Nev. Oct. 28, 2010) ("[T]he Court does not suggest that

13   discretionary governmental decision-making may never run afoul of the Equal Protection Clause—it

14   merely concludes that [plaintiff's] use the class-of-one doctrine is improper.  Decisions based upon

15   "an unjustifiable standard such as race, religion, or other arbitrary classification"—traditional

16   suspect classes—are intolerable under the Equal Protection Clause.").  Vinatieri insists a blanket

17   prohibition of class of one claims targeting law enforcement decision-making misses the point

18   advanced in *Engquist*.  The *Engquist* traffic cop exercised his discretion blindly.  Vinatieri has

19   alleged, in contrast, that Mosley and his colleagues refused to arrest his assailants, under

20   circumstances that might ordinarily suggest a crime had taken place, because Mosley disliked the

21   plaintiff personally (or at least liked him much less than the Vallerga family).  If true, Vinatieri

22   argues, the reason cannot possibly be a rational exercise of discretion.

23   For support, Vinatieri cites to an opinion from the Seventh Circuit.  In *Hanes v. Zurick*, 578

24   F.3d 491 (7th Cir. 2009), the court found a plaintiff had pleaded a "class of one" equal protection

25   claim where he alleged police officers continually showed favoritism to one side in a set of warring

26   neighbors.  "*Engquist* does show that some discretionary police decision-making is off-limits from

27   class-of-one claims," the court reasoned, but, an "officer motivated by malice alone is not exercising

28

No. C 10-3854
ORDER

1  discretion and is not weighing the factors relevant to the officer's duties to the public." *Id.* at 496.

2  That rationale it recognizes the discretion inherent in law enforcement decision-making but exempts

3  actions inspired by purely irrational motives.  Certainly, while it may prove difficult to show that

4  Vinatieri was singled out solely on account of Mosley's personal malice or because he agreed, as the

5  FAC insists, to do the Vallerga family's "bidding," whether Vinatieri has *pleaded* such a claim is a

6  different question.

7        Even if it is possible, however, to plead a class of one claim in this context, Vinatieri has not

8  explained to *whom* he was similarly situated.  The phrase is entirely absent from the FAC.  The

9  equal protection claim must be dismissed, although Vinatieri may amend the FAC if he can do so.

10 Because the conspiracy claim assumes an underlying constitutional violation, it must also be

11 dismissed with leave to amend.

12        c.   Deliberate Indifference to Medical Needs

13        Vinatieri's second claim for relief, also brought under the auspices of section 1983, avers the

14 officers were "deliberately indifferent" to his medical needs.  The deliberate indifference standard

15 classically applies to government action in the context of a *detainee*'s medical needs (a detainee

16 relies on the due process clause; a person convicted of a crime and in custody relies on the eighth

17 amendment).  *See Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002)

18 ("[P]ersons in custody ha[ve] the established right not to have officials remain deliberately

19 indifferent to their serious medical needs.") (citation omitted; alteration in original).  Vinatieri

20 indisputably was not under arrest or otherwise detained and his reliance on the "deliberate

21 indifference" standard is therefore inapt.  Even assuming for the sake of argument that Vinatieri was

22 detained, however, defendants argue the FAC as pleaded negates the medical needs claim.  Vinatieri

23 acknowledges that the officers did summon emergency medical help, and that the responding

24 medical team offered transportation to a local hospital.  The problem from Vinatieri's perspective,

25 apparently, was that the officers called only a *single* ambulance, and both Michael Vallerga and

26 Vinatieri complained of injuries requiring a hospital visit.  Vinatieri indisputably could have used

27 the ambulance for transport to the hospital but simply chose not to.  If anyone prevented Vinatieri

28

United States District Court
For the Northern District of California

1   from riding in the ambulance, it was Vinatieri himself or perhaps Michael Vallerga, but not the

2   responding officers.  The claim must therefore be dismissed.  As amendment would be futile, leave

3   to amend is not warranted.

4           d.   Substantive Due Process

5           In his fourth claim for relief, Vinatieri alleges the public and private defendants' alleged

6   conspiracy ran afoul of the Fourteenth Amendment's substantive due process guarantee.

7   Specifically, Vinatieri asserts that the alleged conspiracy "was the moving force behind the trespass

8   and assault that caused damage and harm to the plaintiff," and that the conspiracy "shocks the

9   conscience in violation of plaintiff's right to substantive due process . . . ."  (FAC § 56.)

10  Substantive due process protects individuals from arbitrary deprivation of their liberty by

11  government.  *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (*citing County of Sacramento v.*

12  *Lewis*, 523 U.S. 833, 845-49 (1998)).  The Supreme Court, moreover, has described the cognizable

13  level of executive abuse of power as that which "shocks the conscience."  *Lewis*, 523 U.S. at 846.

14  That is, only the most egregious official conduct rises to the level of "arbitrary" in a constitutional

15  sense.  *Id.*  "Such conduct can be shown by conduct intended to injure in some way unjustifiable by

16  any government interest."  *Brittain*, 451 F.3d at 991 (*quoting Lewis*, 523 U.S. at 849).  A plaintiff

17  must, however, do more than merely allege "conscious shocking" action.  *Id.*  As a threshold

18  matter, a plaintiff must show a government deprivation of life, liberty, or property to present a

19  substantive due process claim.  *Id.* (*citing Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 948

20  (9th Cir. 2004)) (internal quotation marks omitted).  This is because "there is no general liberty

21  interest in being free from capricious government action."  *Id.* (*quoting Squaw Valley*, 375 F.3d at

22  949).

23          To demonstrate a constitutional violation based on substantive due process, then, Vinatieri

24  must allege both a deprivation of his life, liberty or property plus conscience shocking behavior by

25  the government.  Vinatieri has not expressly explained his theory as to how the requisite deprivation

26  occurred.  Viewing the FAC liberally, however, it is at least apparent that Vinatieri claims Mosley

27  had a friendship with the Vallerga family, and that this friendship escalated into some kind of

28                                                                              No. C 10-3854
                                                                               ORDER

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    understanding between the parties that Mosley would exercise his influence to shield them from

2    penal consequences.  The FAC concludes that, as a result, Mosley was responsible for McMullen

3    and Vallerga's actions, and Vinatieri's resulting injuries, on the night of August 30, 2008.  The

4    Constitution protects a citizen's liberty interest in his or her own bodily security.  *Kennedy v. City of*

5    *Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).  "[A]lthough the state's failure to protect an

6    individual against private violence does not generally violate the guarantee of due process, it can

7    where the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where

8    state action creates or exposes an individual to a danger which he or she would not have otherwise

9    faced."  *Id.* (*quoting DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 197

10   (1989)).  The problem here is not that Vinatieri cannot possibly state a substantive due process

11   claim, but whether he has in the FAC stated a *plausible* one.  More specifically, although the FAC

12   *concludes* Mosley's friendship and alleged agreement to protect the Vallerga family caused the

13   fight, whether it includes facts to render the conclusion plausible is another matter.  Vinatieri

14   includes no specific facts that would suggest that, prior to the fight, the Vallerga family would have

15   been led to believe that the officer would bend the law in their favor.  At least as the pleadings are

16   currently constituted, it would be an unwarranted leap to infer Mosley "affirmatively placed"

17   Vinatieri in danger of physical violence at the hands of the Vallerga family.  As to the three other

18   officers, there are no facts whatsoever advanced in the FAC to suggest *any* involvement in the

19   dispute between the neighbors prior to the fight.  Accordingly, the fourth claim for relief must be

20   dismissed, with leave to amend.

21          e.   First Amendment Claim

22          In his fifth claim, Vinatieri alleges the officers conspired to retaliate against him for

23   complaining to government officials and agents regarding matters of public concern.  Governmental

24   action "designed to retaliate against and chill political expression strikes at the heart of the First

25   Amendment."  *Mendocino Environmental Center v. Mendocino* County, 14 F.3d 457, 464 (9th Cir.

26   1994) (*citing Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).  "Accordingly, the

27   victim of such action is entitled to sue the responsible" officers.  *Id.*  That said, a plaintiff "may not

28                                                                             No. C 10-3854
                                                                             ORDER

                                              11

United States District Court

For the Northern District of California

1   recover merely on the basis of a speculative 'chill' due to generalized and legitimate law

2   enforcement initiatives." *Id.* "To demonstrate retaliation in violation of the First Amendment, [a

3   plaintiff] must ultimately prove first that [defendants] took action that would chill or silence a

4   person of ordinary firmness from future First Amendment activities." *Dietrich v. John Ascuaga's*

5   *Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008) (*quoting Skoog v. County of Clackamas*, 469 F.3d

6   1221, 1231-32 (9th Cir. 2006)). "The second requirement is [that] . . . [plaintiff] must ultimately

7   prove that [defendants'] desire to cause the chilling effect was a but-for cause of [defendants']

8   action." *Id.* (alterations in original).

9       In the FAC, Vinatieri claims he lodged complaints with myriad officials regarding the

10  Vallerga family's land use and the environmental effects of their activities.  He avers that

11  "[b]eginning in approximately 2007," he notified the Sheriff's Department in particular of oil and

12  other toxic waste stored improperly on the Vallerga property.  (FAC § 23.)  Vinatieri also notes that

13  he was engaged in civil litigation with members of the Vallerga family with land use and

14  environmental issues at the heart of the lawsuit.  Although Vinatieri does not aver any individual

15  officers *knew* of this litigation, he recounts two occasions on which Mosley observed him in court.

16  One involved a hearing for a temporary restraining order sought by the Vallerga family against

17  Vinatieri.  At the other, Vinatieri appeared to resolve a traffic violation citation.  Accordingly,

18  Vinatieri concludes the officers sought to chill his speech relating to his environmental concerns and

19  also to discourage him from pursuing relief through the judicial system.  What is not clear from the

20  FAC is whether the individual officers actually knew of his complaints or of the civil litigation.

21  Even if Mosley did see Vinatieri in court, the incidents involved a vehicle code violation and a

22  setting where Vinatieri was the *responding* party.  At least as pleaded, it is not clear how the

23  officers' behavior was linked to and intended to curb Vinatieri's speech.  This claim therefore must

24  be dismissed, with leave to amend.

25       f.   Fourth Amendment

26       Vinatieri asserts that the officers conspired to violate his right to be free from unreasonable

27  search and seizure.  He insists he was "seized" when Michael Vallerga and Eileen McMullen

28

NO. C 10-3854
ORDER

United States District Court
For the Northern District of California

1   knocked him to the ground and began kicking him.  The Fourth Amendment claim is also advanced

2   against the private individuals (namely, under a theory that they operated at the time as "state

3   actors").  The private actors did not join the motion to dismiss, and this Order focuses only on

4   moving defendants' participation in the alleged conspiracy.  Again, Vinatieri has only alleged that

5   Wong, Johnson and Ortiz "agreed" not to arrest Vallerga or McMullen *after* the incident occurred

6   and it is not plausible, at least under the facts included in the FAC, that they could have conspired to

7   *cause* it.  As to Mosley, Vinatieri suggests McMullen and Vallerga were acting as "joint actors"

8   with law enforcement when the altercation occurred.[1]  Although Vinatieri has detailed facts

9   suggestive of a friendship between Mosley and the Vallerga family, a plausible inference does not

10  follow that McMullen and Vallerga acted at Mosley's behest.  The claim therefore must be denied,

11  with leave to amend.

12          2.   Municipal Liability

13          Plaintiffs seek to recover damages from Napa County pursuant to 18 U.S.C. section 1983.

14  The County moves to dismiss all claims brought against it on the ground that Vinatieri has failed to

15  attribute the alleged tortious acts of the officers to a city policy or procedure or an omission

16  amounting to deliberate indifference.  "[A] municipality cannot be held liable under section 1983 on

17  a respondeat superior theory."  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691

18  (1978).  Instead, a plaintiff can allege that the action inflicting injury flowed from either an

19  explicitly adopted or a tacitly authorized city policy.  *Monell*, 436 U.S. at 690-91; *Harris v. City of

20  Roseburg*, 664 F.2d 1121, 1130 (9th Cir. 1981) ("'Official policy' within the meaning of *Monell*

21  [encompasses situations] where a municipality 'impliedly or tacitly authorized, approved, or

22  encouraged' illegal conduct by its police officers.") (*quoting Turpin v. Mailet*, 619 F.2d 196, 201

23  (2nd Cir.), cert. denied, 449 U.S. 1016 (1980)).  A plaintiff need not allege that the municipality

24  *itself* violated his or her constitutional rights or directed one of its employees to do so, but can allege

25

26  [1] Vinatieri correctly notes that a private actor may operate under color of state law where he or she
    acts "jointly" with a state officer. *See, e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)
27  ("To act 'under color' of law does not require that the accused be an officer of the State.  It is
    enough that he is a willful participant in joint activity with the State or its agents.").

28                                                          NO. C 10-3854
                                                            ORDER

**United States District Court**
For the Northern District of California

1    that through its *omissions* the municipality is responsible for a constitutional violation committed by

2    one of its employees, even though the municipality's policies were facially constitutional, the

3    municipality did not direct the employee to take the unconstitutional action, and the municipality did

4    not have the state of mind required to prove the underlying violation.  *Gibson v. County of Washoe,*

5    *Nevada*, 290 F.3d 1175, 1186 (9th Cir. 2002) (*citing City of Canton v. Harris*, 489 U.S. 378, 387-89

6    (1989)) (emphasis added).  That said, because *Monell* held that a municipality may not be held liable

7    under a theory of respondeat superior, a plaintiff must show that the municipality's deliberate

8    indifference[2] led to the omission and it caused the employee to commit the constitutional violation.

9    *Id.*  In order to do so, the plaintiff must also show that the municipality was on actual or constructive

10   notice that its omission would likely result in a constitutional violation.  *Id.* (*citing Farmer v.*

11   *Brennan*, 511 U.S. 825, 841 (1994)).  Taken together, then, Vinatieri must allege: (1) that an officer

12   employed by the County violated Vinatieri's rights; (2) that the County has customs or policies that

13   amount to deliberate indifference (as that phrase was defined by the Supreme Court in *Canton*); and

14   (3) that these policies were the moving force behind the officer's violation of Vinatieri's

15   constitutional rights, in the sense that the County would have prevented the violation with an

16   appropriate policy.  *Id.* at 1193-94 (*citing Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir.

17   2001)).

18          The County argues Vinatieri has not introduced facts suggestive of even a tacitly authorized

19   policy favoring the Vallerga family over Patrick Vinatieri.  All that Vinatieri has alleged is an

20   allegiance between a particular officer, Mosley, and the Vallerga family.  Although Vinatieri

21   *concludes* that the County endorsed Mosley's behavior, factual support in the FAC is missing.  The

22   _____

23   [2] In *Canton*, the Supreme Court delved into the meaning of "deliberate indifference" in the context
     of *Monell* liability.  The Court held that a "failure to train" police officers may serve as the basis for
     liability under section 1983 "where the failure to train amounts to deliberate indifference to the

24   rights of persons with whom the police come into contact."  489 U.S. at 388.  "Policies of omission
     regarding the supervision of employees, then can be 'policies' or 'customs' that create municipal

25   liability under *Monell*, but only if the omission reflects a 'deliberate' or 'conscious' choice to
     countenance the possibility of a constitutional violation."  *Gibson*, 290 F.3d at 1194 (*quoting*

26   *Canton*, 489 U.S. at 389-90).  When the need to remedy an omission "is so obvious, and the
     inadequacy so likely to result in the violation of constitutional rights, . . . the policymakers of the

27   city can reasonably be said to have been deliberately indifferent to the need."  *Canton*, 489 U.S. at
     390.

28                                                                              NO. C 10-3854
                                                                                ORDER

14

**United States District Court**
For the Northern District of California

1  FAC notes that on one occasion the Sheriff asserted that he could not proscribe a friendship between

2  Mosley and the Vallerga family, and at other times, that the Sheriff was not available to meet

3  personally with Vinatieri to discuss the August 30 incident.  Without more, these are not facts

4  plausibly suggestive of a county policy endorsing or condoning the constitutional violations alleged,

5  or even that the Sheriff knew enough about the neighbors' dispute to have been alert to the

6  possibility officers beneath him would abuse authority to favor one side over the other.  Vinatieri's

7  *Monell* claim therefore must be dismissed, with leave to amend.

8

9                                    V.  CONCLUSION

10        For the reasons stated above, Vinatieri's FAC must be dismissed in its entirety.  With the

11  exception of his medical needs claim, Vinatieri may amend his FAC consistent with this Order.  He

12  must do so within thirty days of this Order's issuance.  Failure to amend may result in dismissal for

13  failure to prosecute.

14

15

16        IT IS SO ORDERED.

17

18  Dated: 4/7/11

        _____
19        RICHARD SEEBORG
          UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28                                                                        No. C 10-3854
                                                                          ORDER

15